UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br>*ex rel.* JOSEPH PIACENTILE, *et al.*,<br><br>    PLAINTIFFS,<br><br>    v.<br><br>MERCK-MEDCO MANAGED CARE, L.L.C.,<br>*et al.*,<br><br>    DEFENDANTS. | Case No. 00-CV-737<br><br>Hon. Clarence C. Newcomer |

**RELATOR JOSEPH PIACENTILE'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

**I.    Introduction**

The Government and Relators have sued Medco[1] and the other defendants alleging that they committed a widespread fraud upon the federal government, federal employees and patients throughout the United States. These allegations include, among others, that defendants (1) intentionally shorted mail order prescriptions; (2) submitted false reports and falsified prescriptions; (3) interchanged drugs on a widespread level from drugs originally prescribed in order to obtain lucrative rebates; and (4) created false records and reports relating to prescriptions in order to deceive the Government and its subcontractor into believing that Medco was satisfying contractual performance guarantees in order to avoid

---

[1] The term "Medco" refers to the corporate defendants Merck-Medco Managed Care, L.L.C., Medco Health Solutions, Inc., Merck Medco RX Services of Florida, No. 2, L.C., Medco Health RX Services of Florida, L.C., Merck-Medco RX Services of Nevada, Inc., and Merck-Medco RX Services of Texas, L.L.C.

substantial penalties.

The Government's Complaint does not simply rely on the Relator Piacentile's detailed, intensive investigation or the Relators Hunt and Gauger's information regarding these issues. Rather, the Government conducted its own independent, four-year investigation into all of these allegations. It was not until its investigation was completed that the Government made the determination to intervene into the Relators' Complaints and filed the instant action. Because the defendants desperately want to avoid dealing with the substantive and serious allegations being made against them, they are instead attempting to deflect the Court by asserting technical procedural defenses against the very Relators who uncovered their fraud.[2] Because the Government has intervened in the case, such arguments may delay consideration of the Government's claims, but they will have no ultimate impact on whether this case goes forward. Furthermore, they are completely without factual or legal merit.

Relator Piacentile adopts in their entirety the arguments set forth in the United States of America's Opposition to Defendants' Motions to Dismiss. Relator Piacentile also adopts sections I, III.A.1. and III.A.2. of Relator's Response In Opposition to Defendants Motion to Dismiss, discussing the legal and factual reasons that Medco's "public disclosure" argument must be rejected and the legal underpinnings of the "original source" exception.[3]

---

[2] Defendants have also sought to demonize relators in public statements and documents filed with this Court even though they know that the evidence against them is confirmed by defendants' own documents and defendants' own admissions and is based upon an intensive four year Government investigation.

[3] Because, as a procedural matter, Relator Piacentile need not respond to defendants' arguments pertaining to "original source" as they relate to other Relators or the other Relators' factual response to those arguments, he takes no position at this time as to the factual basis of the "original source" arguments set forth in Relators Hunt and

Relator Piacentile submits this brief memorandum to comment separately on facts specific to his Complaint as they relate to the "public disclosure" and "original source" issues, as well as the legal framework for addressing "original source."

## II. Relator Piacentile's Complaint Is Not Based upon the Alleged Public Disclosures

Defendants rely on four short, redundant documents relating to the Government's pursuit of Merck & Co., Medco's former parent, for antitrust violations and media reports of the Government's 1998 antitrust settlement with Merck. For the detailed reasons set forth in Relators' Response in Opposition to Defendants' Motion to Dismiss, the general, vague statements contained in those documents (which defendants did not even bother discuss or provide to the Court with their motion), do not constitute the type of specific and particular allegations necessary to properly raise the "public disclosure" issue, much less bar the Relators' Complaints under the False Claims Act.[4]

With respect to Relator Piacentile, his Complaint, compiled after a painstaking, independent investigation, details the specifics of the how, when, why and who, none of which are contained in the scant documents pertaining to the antitrust settlement. In particular, Dr. Piacentile's Complaint specifically alleges that Medco:

(1) induced physicians to switch patient medications by providing

---

Gauger's memorandum. Obviously, Relator Piacentile does not join in those portions of the other Relators' brief which characterize or comment on facts specific to Relators Hunt and Gauger. Finally, Relator Piacentile does not join in Relator Hunt and Gauger's arguments addressing state False Claims Act issues which are particular to their Complaint.

[4] If, as defendants claim, the Government was aware of the specifics of such fraud in 1998, it would presumably have begun its investigation at that time and would not have intervened in Relators' lawsuits here.

misleading, false or incomplete information in order to receive secret rebates from drug manufacturers;

(2) secretly increased the cost of drugs by knowingly interchanging[5] patients' medications, in part through retagging and pro-active calling operations, to prevent them from taking advantage of soon to be available generic drugs;

(3) violated state requirements governing prescription drug fulfillment processes;

(4) routinely interchanged hundreds of drugs manufactured by virtually every drug manufacturer in the world including AstraZeneca, Bayer, Bristol-Myers Squibb, GlaxoSmithKline, Merck, Pfizer and Park Davis;

(5) obtained huge sums for giving certain manufacturers drugs preferred status on formularies and for improving the market share performance of a specific product;

(6) maintained a highly confidential training program that provides extensive training to pharmacists whose job is devoted to promoting interchanging and uses a "script" that pharmacists rely on to deceive physicians into interchanging drugs; and

(7) meticulously tracked the interchange performance of individual pharmacists and call centers and rated individual physicians based upon their receptiveness to interchanging.

The detailed and extensive allegations contained in Relator Piacentile's Complaint stand in stark contrast to the statements proffered and documents cited by Medco. Nowhere in

---

[5] "Interchanging" is the process by which Medco persuades physicians to prescribe a drug other than the one originally selected. "Proactive calling" involves the interchanging of a prescription filled through defendants' mail order pharmacies before it is filled. "Retagging" is the process by which the interchange is carried out on refills of prescriptions that are obtained through retail pharmacies.

the scant ten pages of documents identified by Medco are any of the allegations set forth above discussed.  Moreover, the alleged "public disclosures" concern themselves primarily with the possible anti-competitive effects of Merck's acquisition of Medco, an issue that is wholly outside the scope of the *qui tam* complaints before the Court.

For all the reasons expressed in the Memorandum submitted by Relators Hunt and Gauger and for these additional reasons, we respectfully submit that no public disclosure has occurred and, accordingly, defendants' motion must be denied.  See, e.g., United States ex rel. Springfield Terminal Railway Co. v. Quinn, 14 F.3d 645, 657 (D.C. Cir. 1994) (if all essential elements of the fraud are not publicly disclosed, no public disclosure has occurred for purposes of the False Claims Act); accord, United States ex rel. Dunleavy, v. County of Delaware, 123 F.3d 734 (3d Cir. 1997).  Furthermore, as argued at length in the brief of Relators Hunt and Gauger, the allegations contained in the Relator's Complaints are not based upon the general statements proffered by defendants.  It is well settled that, even if public disclosures exist, a relator's Complaint is not based upon those public disclosures unless those public disclosures disclose all of the essential transactions pertaining to the fraud.  See U.S. ex rel. Mistick v. Housing Authority of Pittsburgh, 186 F.3d 376, 388 (3d Cir. 1999).[6]

### III.  Relator Piacentile Is an Original Source

Once the Court finds that Relators' Complaints are not "based upon" public disclosures and that, indeed, no public disclosures have occurred of the allegations and transactions contained therein, the Court's analysis must end, and defendants' motions

---

[6] As is shown here, Dr. Piacentile's Complaint is based on his own independent investigation not the outdated, general statements defendants claim to be "public disclosures."

must be denied. Consequently, we respectfully submit the Court need not and should not reach the issue of whether or not Relators are "original sources" under the Act.

In the unlikely event that the Court reaches the "original source" issue, Relator Piacentile submits that further briefing will be necessary because a determination of whether a relator is an original source is a fact-intensive inquiry that will require analysis of information beyond that presently before the Court.[7] Defendants, recognizing this fact, declined to address the law or the factual allegations pertaining to this issue.[8]

In particular, as to Relator Piacentile, the factual record would include, but not be limited to, the fact that Dr. Piacentile performed an independent investigation into defendants' drug-interchanging business practices. He secured and reviewed hundreds

---

[7] E.g., U.S. ex rel. Laird v. Lockheed Martin Eng'g and Science Serv. Co., 336 F.3d 346, 355 (5th Cir. 2003) (when making an "original source" determination, the court "must look to the factual subtleties of the case before it and attempt to strike a balance between those individuals who, with no details regarding its whereabouts, simply stumble upon a seemingly lucrative nugget and those actually involved in the process of unearthing important information about a false or fraudulent claim"); United States ex rel. Mistick PBT v. Housing Authority of the City of Pittsburgh, 186 F.3d 376, 389 (3d Cir. 1999) (referencing facts outside the complaint in making an "original source" determination); U.S. ex rel. The Precision Co. v. Koch Indus., Inc., 971 F.2d 548, 554 (10th Cir. 1992) (examining extensive factual record to arrive at "original source" determination); United States ex rel. Coppock v. Northrop Grumman Corp., 2003 U.S. Dist. LEXIS 12626, *26 (N.D. Tex. July 22, 2003) (acknowledging fact-intensive nature of "original source inquire" and noting possible need to analyze it "in the context of a merits-based summary judgment motion"); U.S. ex rel. Atkinson v. Pennsylvania Shipbuilding, 255 F. Supp. 2d 351, 376-77 (E.D. Pa. 2002) (examining extensive factual record in making "original source" determination); U.S. ex rel. Merena, v. SmithKline Beecham Corp., 114 F. Supp. 2d 352, 360-61 (E.D. Pa. 2000) (examining relators' backgrounds and other facts in making "original source" determination).

[8] On the issue of "original source," Medco's entire argument consists of the statement, "Relators also fail to allege they are 'original sources.'" Medco Motion to Dismiss at 53. Although Relator is unaware of any case law that requires such an allegation to be pled, if the Court believes a pleading deficiency exists, Dr. Piacentile seeks leave to amend his Complaint to assert additional specific allegations which would clearly qualify him as an "original source."

of pages of internal Medco documents, including defendants' "script," given to every Medco pharmacist for the purpose of training them to switch drugs, and other highly confidential documents.  Dr. Piacentile also personally secured admissions on tape from Medco pharmacists and Medco officials who were engaged in the fraud.  Accordingly, the allegations in Dr. Piacentile's Complaint are not based upon the general statements in four antitrust-related documents cited by Medco but, rather, upon the fraud personally uncovered by Dr. Piacentile during his investigation.  These allegations will clearly establish that Dr. Piacentile is an original source.  Indeed, the very purpose of the "original source" provision was to permit independent investigators such as Dr. Piacentile to serve as relators in False Claims Act cases.  See, Hartigan v. Palumbo Brothers, 979 F. Supp. 624 (N.D. Ill. 1992) ("[i]t is clear from the legislative history that Congress specifically sought to reverse . . . Dean so that suits could be brought by relators, such as the State of Wisconsin, whose in depth investigation uncovered the information of fraud on the government"); U.S. ex rel v. Precision Co. Koch Indus., Inc., 971 F.2d 548, 552-53 (10th Cir. 1992) ("the 1986 amendments represent a clear congressional intent to reverse decisions like Dean and permit qui tam suits to be brought by a relator whose independent investigation uncovers fraud against the government").

      This Circuit has specifically recognized the right of outside investigators to qualify as original sources.  See, e.g., U.S. ex rel Stinson, Lyons, Gerlin & Bustamante, P.A. v. Prudential Ins. Co., 944 F.2d 1149, 1161 (3d Cir.1991) (observing that non-insider relators may also qualify as original sources if their information results from their own investigations); U.S. ex rel Atkinson v. Pennsylvania Shipbuilding, 255 F. Supp. 2d 351, 379 (E.D. Pa. 2002) (holding that private investigation by relator who inspected Delaware

County records and discovered defendant's failure to record Navy security instruments conferred original source status on his co-relator); also see <u>U.S. ex rel Lamers v. City of Green Bay</u>, 168 F.3d 1013 at 1017-18 (7th Cir.1999) (holding private bus company owner who investigated bus routes of competitor had direct knowledge and was original source); <u>U.S. ex rel. Hartigan</u>, 797 F. Supp. at 630-31 (State of Illinois was original source because it investigated fraud on highway construction contract).  Finally, see <u>Cooper v. Blue Cross and Blue Shield of Florida, Inc.</u>, 19 F.3d 562 (11th Cir.1994) (where the Eleventh Circuit ultimately concluded that a Medicare beneficiary who spent three years investigating a case qualified as an original source).

As discussed above, however, this Court need not reach the issue of original source because the allegations in Relators' Complaints are not based upon the alleged public disclosures identified by defendants.

## IV. Conclusion

For all the foregoing reasons, we respectfully submit that the Court should deny defendants' motion to dismiss in all respects as it pertains to the Relators' Complaints.

Respectfully submitted,

s/ *Mitch Kreindler*

Mitchell R. Kreindler (PA Bar No. 80161)
KREINDLER & ASSOCIATES, P.C.
9219 Katy Freeway, Suite 237
Houston, TX 77024-1527
713.647.8888
    –and–
Sharon M. Gurak (PA Bar No. 40026)
KREINDLER & ASSOCIATES, P.C.
7 Great Valley Parkway, Suite 210
Malvern, PA 19355-1425
610.889.1100

COUNSEL FOR *QUI TAM* RELATOR
JOSEPH PIACENTILE, M.D.

January 30, 2004

## **CERTIFICATE OF SERVICE**

I certify that Relator Joseph Piacentile's Memorandum of Law In Opposition to Defendants' Motion to Dismiss was filed electronically on January 30, 2004 and is available for viewing and downloading from the Electronic Case Filing (ECF) System. The following counsel of record were served electronically via the ECF System:

| | |
|---|---|
| James G. Sheehan, Esq.<br>jim.sheehan@usdoj.gov<br>kimberly.collins@usdoj.gov<br>civil.ecf@usdoj.gov | Mary Catherine Frye, Esq.<br>mary.catherine.frye@usdoj.gov<br>jennifer.agnoni@usdoj.gov<br>jackie.brooke@usdoj.gov |
| Sonya Fair Lawrence, Esq.<br>sonya.lawrence@usdoj.gov<br>theresa.shields@usdoj.gov<br>civil.ecf@usdoj.gov | Nicholas M. Centrella, Esq.<br>ncentrella@cogr.com<br><br>Janet C. Fisher, Esq.<br>jfisher@wc.com |
| Jack E. Fernandez, Esq.<br>jfernandez@zuckerman.com | |

On the same date, the following counsel of record were served with a copy of the filing by first-class mail, postage prepaid:

| | |
|---|---|
| Christopher K. Barry-Smith, Esq.<br>Betsy Whittey, Esq.<br>Thomas Reilly, Esq.<br>Attorney General Office<br>Consumer Prot & Antitrust Div.<br>Public Protection Bureau<br>One Ashburton Place 18th Floor<br>Boston, MA 02018 | Alison M. Duncan, Esq.<br>Porter, Wright, Morris & Arthur<br>1919 Pennsylvania Ave., N.W.<br>Ste. 500<br>Washington, DC 20006-3434<br><br>Gregory C. Fleming, Esq.<br>Virginia Office of Attorney General<br>900 East Main Street |
| Michael K. Bassham, Esq.<br>Peter M. Coughlan, Esq.<br>Attorney General's Office<br>State of Tennessee<br>Antitrust Division 3rd Floor<br>P.O. Box 20207<br>Nashville, TN 37202 | Richmond, VA 23219<br><br>Simon Gaugush, Esq.<br>Zuckerman Spaeder LLP<br>101 E. Kennedy Boulevard<br>Suite 1200<br>Tampa, FL 33602 |

Scott Godshall, Esq.
List & List
113 North Olive Street
Media, PA 19063

Patrick H. Haggerty, Esq.
Philip E. Kessler, Esq.
Porter Wright Morris & Arthur, LLP
One S. Main St.
Suite 1600
Dayton, OH 45402

Michael J. Holston, Esq.
Drinker Biddle & Reath LLP
One Logan Sq.
18th & Cherry Sts.
Philadelphia, PA 19103-6996

Michael Kelley, Esq.
Benjamin James Stevenson
Office of the Attorney General
Pl-01, The Capital
Tallahassee, FL 32399-1050

Marie Martin-Kerr, Esq.
State of Nevada
Office of the Attorney General
Senior Deputy Attorney General
Bureau of Consumer Protection
1000 East William St. Suite 200
Carson City, NV 89701

William E. McDaniels, Esq.
Enu Mainigi, Esq.
Williams and Connolly
725 Twelfth St., N.W.
Washington, DC 20005

Marc S. Raspanti, Esq.
Miller Alfano & Raspanti, P.C.
1818 Market Street
Suite 3402
Philadelphia, PA 19103-3638

Sidney Rocke, Esq.
Arthur J. Parker, Esq.
Charlotte W. Parker, Esq.
Stuart I. Silverman, Esq.
D.C. Office of the Inspector General
Medicaid Fraud Control Unit
717 14th St., N.W., 5th Floor
Washington, DC 20005

Brian Sandoval, Esq.
Office of the Attorney General
Attorney General of Nevada
Carson City Office
100 North Carson St.
Carson City, NV 89701-4717

L. Timothy Terry, Esq.
Office of the Attorney General
Medicaid Fraud Control Unit
State of Nevada
198 North Carson Street
Carson City, NV 89701-4717

s/ *Mitch Kreindler*

Mitchell R. Kreindler